IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JOSIE AREVALO**,

    Plaintiff

        v.

**MICHAEL J. ASTRUE**, **Commissioner,**
**Social Security Administration,**

    Defendant.

No. 3:10-cv-06219-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Plaintiff Josie Arevalo ("Arevalo") challenges the Commissioner's decision finding her not disabled and denying her applications for Disability Insurance Benefits ("DIB"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

    I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

1 – OPINION AND ORDER

## BACKGROUND

Born in 1957 (AR[1] [8] 155), Ms. Arevalo has a tenth-grade education. (*Id*. at 181). Ms. Arevalo applied for DIB on September 14, 2004, alleging disability since June 1, 2003 (*id*. at155), due to a right shoulder injury, cervical spine injury, and depression. (*Id*. at 214). She also alleges disability due to a back injury. (*Id*. at 175). The Commissioner denied Ms. Arevalo's applications initially and upon reconsideration. (*Id*. at 56-58; 125-37). An Administrative Law Judge ("ALJ") held a hearing on August 30, 2007 (*id*. at 528-56), and subsequently found Ms. Arevalo not disabled on April 5, 2008. (*Id*. at 43-55). The Appeals Council declined review of the matter on June 3, 2010. (*Id*. at 5-7).

## THE ALJ'S FINDINGS

The ALJ found that while Ms. Arevalo's cervical degenerative joint disease was "severe" at step two in the sequential proceedings (*id*. at 45), the condition did not meet or equal a listing at step three. (*Id*. at 48). The ALJ assessed Ms. Arevalo's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work . . . except as compromised by specific limitations. The residual functional capacity for light exertional level activities including lifting and carrying limited to 10 pounds; pushing and pulling limited to 10 pounds; standing or walking 2 hours at a time and total of 8 hours; sitting 2 hours at a time and total of 8 hours; the option to change position every 30 minutes; no climbing or ropes or ladders, and no work around hazards; and balancing, stooping, kneeling, crouching, and crawling limited to occasional.

(*Id.*). The ALJ found that this RFC allowed Ms. Arevalo to perform work in the national economy at step five in the sequential proceedings, and therefore found her not disabled. (*Id*. at 554-55).

---

[1] Citations "AR" refer to the indicated pages in the official transcript of the administrative record filed by the Commissioner on January 25, 2011 [8].

## ANALYSIS

Ms. Arevalo asserts that the ALJ erroneously assessed her credibility and the opinions of two physicians. She also asserts that the ALJ improperly relied upon a vocational expert's testimony, and, finally, asserts that the ALJ should have found her disabled at step five in the sequential proceedings.

### I.     Credibility

Ms. Arevalo asserts that the ALJ failed to provide sufficient reasons for rejecting her testimony regarding her hands. (Pl.'s Opening Br. [14] 11). The ALJ found Ms. Arevalo's symptom testimony not entirely credible. (AR [8] 50).

#### A.     Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility

3 – OPINION AND ORDER

evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005).

### B. Credibility Analysis

Ms. Arevalo submits that "it is important to review the testimony of Plaintiff," and points to her own testimony regarding her alleged inability to grip with her hands. (Pl.'s Opening Br. [14] 11). She argues that the ALJ erroneously failed to provide "specific" reasons for rejecting this testimony. (*Id.* at 12).

Ms. Arevalo testified that she "can't grip anymore," and that her " hands give out." (AR [8] 536). Her remaining testimony described symptoms relating to other conditions, which Ms. Arevalo does not now cite.

The ALJ found Ms. Arevalo's statements describing her symptoms not credible to the "extent they are inconsistent with the medical evidence of record and to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (*Id*. at 50). The ALJ subsequently discussed the medical record in considerable detail. (*Id*. at 50-53).

Because the RFC assessment must include a credibility determination, 20 C.F.R. § 404.15345(a)(3); Social Security Ruling 96-8p at *7 (*available at* 1996 WL 374184), this court will not affirm an ALJ's credibility decision based only upon reference to the RFC assessment. *Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1167 (D. Or. 2010); *see also Lowe v. Astrue*, 2011 WL 4345168, * 3 (D. Or. Sep. 15, 2011).

In this case, the ALJ discussed Ms. Arevalo's activities of daily living and the medical record in addressing Ms. Arevalo's symptom testimony. (AR [8] 49-53). The ALJ noted Ms. Arevalo's ability to: perform housework and household chores; cook; drive; shop; pay bills; walk one mile; participate in hobbies such as painting rocks; and study for a general equivalency degree ("GED"). (*Id*. at 49). The ALJ may cite a claimant's activities of daily living, *Smolen*, 80 F.3d at 1284, and this court must defer to the ALJ's interpretation of such activities where more than one reasonable interpretation of those activities may arise. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's reliance upon Ms. Arevalo's activities of daily living in rejecting her symptom testimony is therefore affirmed.

The ALJ also discussed Ms. Arevalo's medical record at length, noting that it did not support Ms. Arevalo's stated limitations. (AR [8] 56). The ALJ's credibility analysis may cite the medical record in conjunction with other findings. *Smolen*, 80 F.3d at 1284; *see also Robbins*, 466 F.3d at 883. Ms. Arevalo does not challenge these findings, and they are therefore affirmed.

### C.     Credibility Conclusion

In summary, the ALJ provided sufficient reasons for finding Ms. Arevalo's symptom testimony not credible. The ALJ's credibility finding is affirmed.

## II.     Medical Source Statements

Ms. Arevalo challenges the ALJ's findings regarding examining physician Joseph Diehl, M.D., and reviewing physician Linda Jensen, M.D. (Pl.'s Opening Br. [14] 9-10). She also asserts that the ALJ failed to evaluate various impairments "which could account for" her alleged hand symptoms. (*Id.* at 10).

### A.     Standards: Medical Source Statements

5 – OPINION AND ORDER

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances, the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

B.     Analysis: Physician Opinions

1.     Examining Physician Joseph Diehl, M.D.

Ms. Arevalo challenges the ALJ's assessment of examining physician Dr. Diehl's opinion, particularly as it pertains to her hands. (Pl.'s Opening Br. [14] 9).

Dr. Diehl evaluated Ms. Arevalo for Disability Determination Services ("DDS") on July 21, 2005. (AR [8] 499-503). Dr. Diehl noted Ms. Arevalo's reported medical history and performed an orthopedic examination of her cervical and lumbar spine, as well as a mental status examination. (*Id*. at 500-01). Dr. Diehl also found Ms. Arevalo's bilateral hand grip strength and reflexes to be normal. (*Id*. at 501). He noted "hypesthesia to pinprick sensation . . . over the palmar aspect of either hand. Otherwise, there is no sensory loss in the upper or lower extremities." (*Id*. at 502). Dr. Diehl concluded that Ms. Arevalo suffers "from minimal to moderate degenerative disc disease and degenerative joint diseases involving the cervical and lumbar spine areas." (*Id.*)

Dr. Diehl made the following comments regarding Ms. Arevalo's workplace restrictions:

6 – OPINION AND ORDER

> This patient may indeed have difficulty with vigorous and active types of work activity. She may have difficulty with work activities that require standing and walking more than a half hour to an hour at a time and for more than five to six hours out of an eight hour day. She may have difficulty with work activities that require bending, stooping, squatting or lifting and carrying heavy objects. Her self stated limitation of five pounds, however, does not seem realistic.

(*Id.*). He also stated that Ms. Arevalo "might have some difficulty manipulating objects because of hypesthesia over the hand areas." (*Id.*). In conclusion, the doctor opined: "These limitations are based primarily on her subjective complaints of neck and back pain as well as hand numbness with all such activities. There are minimal objective findings on examination today to support work restrictions." (*Id.*).

The ALJ recited Dr. Diehl's opinion in some detail, noting his finding of hypesthesia on Ms. Arevalo's palms, and concluded as follows: "Dr. Diehl notes that these limitations are based primarily on subjective complaints of neck and pack pain, the hand numbness." (*Id*. at 52-53). The ALJ may reject a physician's opinion predicated upon reports of a claimant properly found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Diehl clearly stated that his suggested work restrictions, including those pertaining to Ms. Arevalo's hand numbness and associated limitations, were based upon Ms. Arevalo's subjective complaints. (AR [8] 502). The ALJ therefore appropriately rejected Dr. Diehl's opinion. This finding is affirmed.

### 2. Reviewing Physician Linda Jensen, M.D.

Ms. Arevalo asserts that the ALJ "ignored" the opinion of reviewing physician Dr. Jensen. (Pl.'s Opening Br. [14] 10).

Dr. Jensen completed a "physical residual functional capacity" form for DDS on August 5, 2005. (AR [8] 504-11). Dr. Jensen indicated that Ms. Arevalo could lift up to twenty pounds occasionally, up to ten pounds frequently, stand or walk about six hours in an eight hour day, sit less than six hours in an eight hour day, and had no restrictions in pushing or pulling. (*Id*. at 507). She also indicated that Ms. Arevalo was limited in reaching and "occasional above the shoulder lifting and carrying bilaterally due to DJD ('degenerative joint disease') of the neck." (*Id*.).

Ms. Arevalo now asserts that the ALJ improperly omitted Dr. Jensen's lifting restriction from her RFC assessment. (Pl.'s Opening Br. [14] 10). The Commissioner contends that the ALJ's omission, if erroneous, is harmless. (Def.'s Br. [15] 10).

The ALJ's RFC limited Ms. Arevalo to lifting no more than ten pounds. (AR [8] 48). Thus, the ALJ did not omit Dr. Jensen's opinion so far as it pertained to weight restrictions. However, the ALJ made no finding regarding overheard reaching. The reviewing court may find an ALJ's error harmless when the ALJ's decision remains legally valid despite the error. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008); *see also Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).

At steps four and five in the sequential proceedings, the ALJ found that Ms. Arevalo could perform work as a "ward clerk" (AR [8] 53), and "ward clerk timekeeper," data entry clerk, and parking lot cashier. (*Id*. at 54). Ms. Arevalo does not presently show that these positions require more than the "occasional" overhead reaching specified by Dr. Jensen. Further, the *Dictionary of Occupational Titles* ("*DOT*") does not indicate that these positions require overhead reaching. s*ee DOT*, "Ward Clerk" (*available at* 1991 WL 672270); "Timekeeper"

(*available at* 1991 WL 215.362-022); "Cashier II" (*available at* 1991 WL 671840); "Data Entry Clerk" (*available at* 1991 WL 671700).

Ms. Arevalo, who was represented by counsel, did not ask the vocational expert to specify that the indicated positions were inconsistent with occasional overhead reaching. (AR [8] 555). Thus, no evidence of record suggests that "occasional" overhead reaching is inconsistent with the ALJ's step four and five findings. Ms. Arevalo fails, therefore, to establish reversible error regarding Dr. Jensen's lifting restrictions.

### C. Analysis: Additional Impairments

Finally, Ms. Arevalo alleges that she has "also been diagnosed with all of the following impairments which could account for the bilateral hand symptoms reported by Plaintiff." (Pl.'s Opening Br. [14] 10). These impairments include: cervical facet syndrome; "status-post left tennis elbow surgery;" protrusion of her C5-C6 disc; "spondylotic" disease; bilateral epicondylitis; ulnar neuropathy of the left and right elbows; a C6-C7 disc herniation; and bilateral carpal tunnel syndrome. (*Id.* at 10-11). Ms. Arevalo asserts that the ALJ "rejected all of these impairments without determining how they impacted [her] ability to work or how they attributed to Ms. Arevalo's described hand problems." (*Id.* at 11). She provides the court with a string citation to the record only, does not discuss this evidence, and makes no explanation of the ALJ's alleged error or the effect of such an error. (*Id.*). The Commissioner asserts that these arguments should be dismissed because Ms. Arevalo fails to discuss them with specificity. (Def.'s Br. [15] 9).

The ALJ discussed Ms. Arevalo's cervical conditions. (AR [8] 46). The ALJ concluded that these alleged impairments were not sufficiently supported by imaging studies and found

them non-severe at step two. (*Id.*). Ms. Arevalo does not challenge these findings and they are therefore affirmed.

Regarding her alleged elbow and carpal tunnel impairments, Ms. Arevalo's citation shows that treating physician Dr. Hales noted her post-surgical status on August 29, 2002, and noted Ms. Arevalo's complaints pertaining to her elbow. (*Id*. at 332). An undated nerve study showed bilateral ulnar neuropathy with no associated work-related limitations. (*Id*. at 411). These citations do not establish work-related limitations pertaining to Ms. Arevalo's elbows or carpal tunnel syndrome. Finally, Ms. Arevalo points to her own report of left epicondylitis (*id*. at 360), which is an inappropriate manner of establishing a medically determinable impairment. Ms. Arevalo therefore fails to establish that the ALJ erroneously omitted limitations pertaining to her elbow or carpal tunnel syndrome.

### D. Medical Evidence Conclusion

In summary, Ms. Arevalo fails to establish reversible error in the ALJ's assessment of the opinions of Dr. Diehl or Dr. Jensen. She also fails to show that the ALJ erroneously evaluated her cervical impairments or alleged elbow and carpal tunnel syndrome impairments. The ALJ's findings addressing the medical evidence are affirmed.

### III. The ALJ's Step Five Findings

Finally, Ms. Arevalo argues that the ALJ erred in finding her not disabled at step five in the sequential proceedings. (Pl.'s Opening Br. [14] 12). She first asserts that the ALJ's step five findings are inconsistent with the *DOT* and such inconsistency is reversible error. (*Id.* at 7-8). Ms. Arevalo also asserts that the ALJ's questions to a vocational expert at step five improperly omitted limitations described by her own testimony and Dr. Diehl and Dr. Jensen. (*Id.* at 12-13).

### A. Standards: Step Five

10 – OPINION AND ORDER

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may take administrative notice of the occupational data contained in the *DOT*, or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. § 404.1566(d)-(e). The ALJ's questions to the vocational expert must include all properly supported limitations, *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001), and the ALJ must ask the vocational expert whether her testimony is consistent with the *DOT*. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Failure to inquire is harmless if the vocational expert "provided sufficient support for her conclusion so as to justify any potential conflicts," or if no conflict arises. *Id.* at n.19.

The ALJ may rely upon a vocational expert's testimony, rather than the *DOT*, when the issue is "complex," 20 C.F.R. §§ 404.1566(e), 416.966(e), or when "the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Such evidence includes available job data and a claimant's specific limitations. *Id.* The decision to use a vocational expert is reserved for the Commissioner. 20 C.F.R. §§ 404.1566(e), 416.966(e).

  **B. Analysis**

    **1. Vocational Expert Testimony and the *Dictionary of Occupational Titles***

Ms. Arevalo first asserts that the vocational expert's testimony is inconsistent with the *DOT* descriptions. (Pl.'s Opening Br. [14] 7). Specifically, she argues that the vocational expert's testimony that she could perform work as a hospital "ward clerk" was incompatible with the ALJ's RFC, which restricted Ms. Arevalo to light work. (*Id.*).

11 – OPINION AND ORDER

The vocational expert testified that Ms. Arevalo's past relevant work as a ward clerk was consistent with the *DOT*. (AR [8] 553). The vocational expert explained that, although the *DOT* classified the position as "light" due to the requirement that an individual "cover a floor" or "walk distances," the position was "essentially a sedentary job." (*Id.*). Ms. Arevalo now asserts, without citation, that the vocational expert "failed to appreciate the more appropriate reason" that the ward clerk position was classified as "light." (Pl.'s Opening Br. [14] 7). Instead, she postulates that the ward clerk position involves pushing and pulling associated with transporting patients in wheelchairs, and that such work "would require pushing and pulling in amounts up to 20 pounds and not just 10 pounds." (*Id.*).

This argument is irrelevant. The vocational expert clearly stated that the ward clerk position is consistent with Ms. Arevalo's RFC. (AR [8] 553). The ALJ may rely upon vocational expert testimony that deviates from the *DOT* when the record contains persuasive evidence to support the deviation. *Johnson*, 60 F.3d at 1435. Here, Ms. Arevalo described her past work as a ward clerk, and stated that she "made assignments for the [certified nurse assistants] and made sure they . . . made the scheduling, made their breaks, kind of made sure they got their work done." (AR [8] 534). In response to questioning, she stated that she had no other responsibilities. (*Id.*). The record thus supports the vocational expert's testimony, and the ALJ's reliance upon it was appropriate.

Ms. Arevalo also asserts that the ALJ erroneously relied upon the vocational expert's testimony that she could perform work as a parking lot cashier. (Pl.'s Opening Br. [14] 7). Ms. Arevalo does not explain or develop this argument. The ALJ asked the vocational expert to consider an individual who could lift ten pounds, push and pull ten pounds, and walk without

limitation. (AR [8] 553). The vocational expert responded that such an individual could perform work as a parking lot cashier. (*Id*. at 554).

The *DOT* classifies a cashier position as "light" work, but also states that:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*DOT*, "Cashier II" (*available at* 1991 WL 671840). This description does not state that a parking lot cashier must push or pull more than ten pounds. The vocational expert's response to the ALJ's hypothetical restricting Ms. Arevalo to pushing or pulling no more than ten pounds is thus consistent with this description, and Ms. Arevalo therefore fails to establish error.

### 2.     Additional Limitations

Finally, Ms. Arevalo asserts that the ALJ's questions to the vocational expert should have included additional limitations assessed by Dr. Diehl and Dr. Jensen, as well as those described in her own testimony. (Pl.'s Opening Br. [14] 13). This argument is also not sustained: the ALJ properly rejected the opinions of Dr. Diehl and Dr. Jensen, and properly rejected Ms. Arevalo's testimony and the lay witness testimony.

In summary, the ALJ's step five findings are affirmed.

### CONCLUSION

In conclusion, Ms. Arevalo fails to show that the ALJ improperly evaluated her testimony, and the opinions of Dr. Diehl and Dr. Jensen. She also fails to show that the ALJ made improper step five findings. The ALJ's decision is based upon the record and the correct legal standards and is therefore AFFIRMED.

IT IS SO ORDERED.

Dated this  4th  day of November, 2011.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge

14 – OPINION AND ORDER